# United States Court of Appeals for the Eleventh Circuit

No. 25-11376

Blake Warner

*Plaintiffs-Appellants,*

*v.*

The School Board of
Hillsborough County, Florida

*Defendants-Appelleees.*

Appeal from the United States District Court
for the Middle District of Florida
USDC No. 8:23-CV-181

**APPELLANT'S MOTION TO CERTIFY QUESTION
TO THE FLORIDA SUPREME COURT**

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

BLAKE@NULL3D.COM

# CERTIFICATE OF INTERESTED PERSONS PURSUANT TO RULE 26.1-1

1. Blake Warner (Appellant)

2. Akerman LLP (Attorneys for Appellee)

3. Fiore, Kristen M. (Attorney for Appellee)

4. Margolin, Jason L. (Attorney for Appellee)

5. Merryday, Steven D., U.S. Dist. Judge (M.D. Fla.)

6. Sneed, Julie S., U.S. Dist. Judge (M.D. Fla.)

7. Griffin, Lindsay S., U.S. Magistrate Judge (M.D. Fla.)

8. The School Board of Hillsborough County, Florida (Appellee)

**MOTION TO CERTIFY QUESTION TO THE FLORIDA SUPREME COURT**

Pursuant to F.R.A.P. Rule 27 and Rule 9.150 of the Florida Rules of Appellate Procedure, Plaintiff-Appellant Blake Warner moves this Court to certify the following question to the Florida Supreme Court:

> "Where a settlement agreement resolving a child's Individuals with Disabilities Education Act (IDEA) lawsuit is executed by a parent both individually and as representative of their minor child, and the agreement purports to release both the child's IDEA claims and the parent's unrelated individual constitutional claims, but consideration flows only to the child in the form of educational services, does Florida law require separate consideration to the parent to enforce the release of the parent's individual claims?"

**INTRODUCTION**

This appeal presents a pivotal, unsettled question of Florida contract law that could determine whether Warner's constitutional claims against the School Board survive. The District Court erroneously held that educational benefits provided solely to Warner's child constituted sufficient consideration to bind both Warner individually and his child, despite consideration only flowing to the child. This holding fundamentally contradicts established principles of contract formation under Florida law and warrants authoritative resolution by the Florida Supreme Court.

The question presented affects countless Florida families whose children receive educational services under IDEA settlements. The prevalence of dual-capacity par-

3

ent signatures on education-related settlement agreements makes this issue one of exceptional public importance that transcends the interests of the parties to this case.

**FACTUAL BACKGROUND**

In August 2021, Warner filed an IDEA due process complaint on behalf of J.W. against the School Board regarding his child's education during COVID-related remote learning. The parties subsequently executed a settlement agreement to resolve the due process complaint in March 2022, signed by Warner in two distinct capacities: (1) "individually" and (2) "on behalf of his minor child, ... 'J.W.'." The agreement provided educational benefits exclusively to J.W.—namely guaranteed school placements and educational services—and contained release language purporting to waive claims of both J.W. and Warner against the School Board.

Warner later filed suit in January 2023 asserting constitutional claims related to systemic racial gerrymandering of county-wide school boundaries and district voting maps—claims entirely distinct from J.W.'s educational services. The District Court granted summary judgment to the School Board, finding the educational benefits to J.W. provided sufficient consideration to simultaneously support Warner's individual release of unrelated constitutional claims and J.W.'s release of claims.

**LEGAL STANDARD**

The certification of questions of Florida law to the Florida Supreme Court derives from both constitutional and procedural authority. Article V, Section 3(b)(6) of the Florida Constitution expressly empowers the Florida Supreme Court to "review a question of law certified by... a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida.". § 25.031, Fla. Stat.; Fla. R. App. P. 9.150(a); *see also Pier 1 Cruise Experts v. Revelex Corp.*, 929 F.3d 1334, 1349 (11th Cir. 2019).

The decision to certify a question to the Florida Supreme Court rests within this Court's discretion, guided by three primary considerations:

First, the question must involve an unsettled issue of state law for which no clear, controlling precedent exists. "When faced with substantial doubt on a dispositive state law issue, [the] better option[]," according to the Court, "is to certify the question to the state supreme court." *In re NRP Lease Holdings, LLC*, 20 F.4th 746, 758 (11th Cir. 2021) (quotations omitted). This Court has "employed the certification procedure more than any other circuit." *Pittman v. Cole*, 267 F.3d 1269, 1290 (11th Cir. 2001); *Royal Capital Dev., LLC v. Maryland Cas. Co.*, 659 F.3d 1050, 1055 (11th Cir. 2011) (stating that the Court "has been less reluctant than others to certify

5

questions of state law").

Second, the legal issue must be of sufficient general importance or recurrence to warrant the Florida Supreme Court's attention. Questions involving the interpretation of Florida statutes or significant public policy considerations are particularly suitable for certification. *In re NRP Lease Holdings, LLC*, 20 F.4th at 746 (holding certification warranted because of the "significant importance affecting creditors and debtors located or doing business in Florida").

Third, the certified question must be dispositive of the case or appeal before the federal court. *Id.* at 758 ("as a matter of federalism and comity, dispositive issues of Florida law should be first presented to the Florida Supreme Court to decide").

All three criteria are satisfied in this case, as the question of whether separate consideration must flow to a parent who contracts in dual capacities involves an unsettled issue of Florida contract law, affects countless IDEA settlements throughout the state, and is potentially dispositive of a significant portion of Warner's appeal.

## ARGUMENT

**1. No Clear, Controlling Florida Precedent Exists on This Issue of Great Public Importance**

No Florida Supreme Court decision directly addresses whether distinct consideration must flow to a parent who contracts both individually and as representative of their minor child when releasing claims unrelated to the child's interests. This tripartite contractual relationship—involving the School Board (first party), J.W. (second party), and Warner in his individual capacity (third party)—presents an unresolved question of Florida contract law.

The question presented is of exceptional public importance because dual-capacity releases are commonplace in IDEA settlements throughout Florida. Every year, thousands of parents sign settlement agreements both individually and on behalf of their children to resolve special education disputes. District courts and administrative tribunals routinely enforce these agreements without clear guidance on whether separate consideration must flow to parents who release individual claims. This legal uncertainty affects school boards, parents, and children statewide—potentially invalidating numerous settlement agreements or improperly foreclosing legitimate constitutional claims.

## 2. Florida Contract Law Requires Consideration for Each Contracting Party

Florida contract law unambiguously requires that each party to a contract receive consideration. A bilateral contract results from "mutual promises to do something in the future, in which the consideration of the one party is the promise on the part of the other, each party being both a promisor and a promisee." *Ferguson v. Carnes*, 125 So. 3d 841, 842 (Fla. Dist. Ct. App. 2013) (quoting *McIntosh v. Harbour Club Villas Condo. Ass'n*, 468 So.2d 1075, 1076 (Fla. 3d DCA 1985)).

When a party agrees to do something they are already bound to do, this cannot constitute valid consideration. As the Florida Court of Appeal explained in *Diaz v. Rood*, 851 So. 2d 843, 846 (Fla. 2d DCA 2003), "'[A] promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do.'" (quoting *Ashby v. Ashby*, 651 So.2d 246, 247 (Fla. 4th DCA 1995)).

In this case, the School Board promised benefits exclusively to J.W.—guaranteed school placements and educational services. No distinct consideration flowed to Warner individually. Since the School Board was already obligated to provide these benefits to J.W. under the Agreement, these same promises cannot simultaneously serve as consideration for Warner's release of his individual claims.

## 3.　The District Court's Consideration Analysis Lacks Supporting Precedent

The District Court summarily concluded that "Warner signed the agreement in both his personal capacity and on behalf of J.W., and Warner promised to release the School Board in exchange for the benefits promised to J.W. . . . This is valid consideration and binds Warner, both individually and as the parent of J.W." (Doc. 112 at 20).

Notably, the District Court cited no Florida caselaw whatsoever to support this critical conclusion regarding consideration. The absence of supporting precedent suggests that this is an unsettled area of Florida law.

## 4.　Guarantor Law Is Inapplicable to This Tripartite Contractual Relationship

The closest Florida law comes to addressing this issue is in guarantor/cosigning contexts. In Florida, "[w]here ... the guaranty is entered into at the time of the creation of the principal obligation and becomes an essential ground of the credit given to the principal debtor, the same consideration for the principal debt suffices for the contract of guaranty." *Gordon v. Corp. Ins. Servs., Inc.*, 374 So. 2d 603, 604 (Fla. Dist. Ct. App. 1979) (citing *Jones v. McConnon & Co., 100 Fla. 1158*, 130 So. 760, 760 (1930); *Anderson v. Trade Winds Enterprises Corp.*, 241 So.2d 174,

9

178 (Fla. 4th DCA 1970)).

This principle is inapplicable here for two reasons. First, Warner's individual capacity is not analogous to that of a guarantor; he was not guaranteeing J.W.'s performance but purportedly releasing his own independent claims. Second, Warner's release of his individual claims was not "an essential ground" for the School Board's promises to J.W. The Agreement's primary purpose was to resolve J.W.'s educational claims under the Individuals with Disabilities Education Act. The School Board could have (and should have) provided the same consideration to J.W. regardless of whether Warner also released his individual claims, to remedy the board's failure to provide a FAPE to J.W.

**5.   Pure Consideration Analysis in a Tripartite Contract**

Treating Warner and J.W. as distinct contracting parties, as Florida law requires, this case presents a straightforward consideration analysis in a tripartite contractual relationship. *see Jones v. McConnon & Co.*, 130 So. at 760 ("... ordinarily a contract of guaranty is separable from the debt of the person whose debt is guaranteed"). The legal issue turns on the fundamental contract principle that each party must receive consideration. When viewed as three distinct contracting entities (School

Board, J.W., and Warner individually), the analysis reveals that one party (Warner individually) received no consideration for his gratuitous promises.

This creates a logical impossibility: For the contract to be enforceable against Mr. Warner personally, the court must accept the absurd result that J.W. was not a valid party to the settlement of his own IDEA litigation and received no consideration for releasing his claims. Conversely, if J.W. was a valid party (as clearly intended), then Mr. Warner personally received no consideration and cannot be bound by the release in his individual capacity. The only reasonable interpretation is that there exists a binding agreement between the School Board and J.W. (through Mr. Warner as representative), but no enforceable agreement between the School Board and Mr. Warner in his personal capacity.

**CONCLUSION**

For these reasons, this Court should certify the proposed question to the Florida Supreme Court. The question presents an unsettled issue of Florida contract law that is potentially determinative of this appeal and has far-reaching implications beyond this case. The issue has significant importance for parent-child contracts throughout Florida, particularly in educational, medical, and family law contexts where parents commonly sign agreements in dual capacities.

The District Court's erroneous consideration analysis and lack of supporting precedent highlight the urgent need for authoritative guidance from Florida's highest court. Given the prevalence of dual-capacity parent signatures on IDEA settlements and the fundamental constitutional rights at stake, this issue is of exceptional public importance warranting immediate certification.

**Certificate of Compliance FRAP 32(g)**

I certify that this paper contains 1800 words and complies with type-volume limitations.

**Certificate of Service**

I certify that the foregoing motion was filed electronically on May 7, 2025, through the appellate CM/ECF system with the Clerk of the Court.

| | |
|---|---|
| May 7, 2025 | /s/blake warner |
| Date | Signature |
| | Blake Warner, *pro se* |
| | 2211 S Village Ave |
| | Tampa, FL 33612 |
| | E-Service: BLAKE@NULL3D.COM |