# United States Court of Appeals
# for the Eleventh Circuit

No. 25-11376

Blake Warner

*Plaintiffs-Appellants,*

*v.*

The School Board of
Hillsborough County, Florida

*Defendants-Appelleees.*

Appeal from the United States District Court
for the Middle District of Florida
USDC No. 8:23-CV-181

**PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

(i)

**Table of Contents**

I    Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

II    Certificate of Interested Persons and Corporate Disclosure Statement . . . .    1

III    Rule 40(b)(2) Statement: The Panel Decision Conflicts With This Court's Published Precedent and the Supreme Court's . . . . . . . . . . . . . . . . . . . . . .    2

IV    Statement of the Issues Presented for Rehearing . . . . . . . . . . . . . . .    4

V    Introduction and Course of Proceedings . . . . . . . . . . . . . . . . . . .    5

VI    The panel overlooked controlling authority holding that federal law, not Florida contract law, governs both the validity and the public-policy enforceability of a waiver of federal civil-rights claims. . . . . . . . . . . . . . . . . . . . . . . . . . .    7

1.    The validity of a waiver of federal rights is a federal question judged by a totality-of-the-circumstances test that admits extrinsic evidence, not by the four corners of the document. . . . . . . . . . . . . . . . . . . . . . . .    7

2.    Whether the waiver was knowing and voluntary was a disputed question of fact requiring discovery, and the panel compounded the error by refusing Warner's extrinsic evidence. . . . . . . . . . . . . . . . . . . . . . . . . .    9

3.    Whether enforcing a waiver of federal rights offends public policy is also a federal question, governed by a federal balancing test, not Florida's contract maxim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

VII    The panel repeated the very party-presentation error Warner appealed, deciding the case on grounds no party advanced. . . . . . . . . . . . . . . . . . . . . .    13

VIII    The agreement not to sue, as the panel construed it, is an impermissible prospective waiver of ongoing and future civil-rights violations that federal public policy forbids. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

IX    The panel decision squarely conflicts with this Court's own published precedent and deepens an acknowledged national split, warranting rehearing en banc. . . .    17

X    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

XI    Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . .    20

XII    Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

# I  Table of Authorities

Cases                                                                        Page

*AFC Franchising, LLC v. Purugganan*,
  43 F.4th 1285 (11th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . 14

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) . . . . . . . . . . . 3, 16

*Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312 (11th Cir. 2024) . . . . . . . . . 7

*Beadle v. City of Tampa*, 42 F.3d 633 (11th Cir. 1995) . . . . . . . . . . . 2, 8, 17

*Bituminous Cas. Corp. v. Williams*, 17 So. 2d 98 (Fla. 1944) . . . . . . . . . 12

*Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*,
  133 F.3d 816 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 3, 10, 17

*Brookhart v. Janis*, 384 U.S. 1 (1966) . . . . . . . . . . . . . . . . . . . 7

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) . . . . . . . . . . . . 12

*Caley v. Gulfstream Aerospace Corp.*,
  428 F.3d 1359 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 3, 9, 17

*Clark v. Sweeney*, 607 U.S. 7 (2025) . . . . . . . . . . . . . . . . . . . 13

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F.2d 1390 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 12

*Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339 (11th Cir. 1983) . . . . . . . . 8

*Greenlaw v. United States*, 554 U.S. 237 (2008) . . . . . . . . . . . . . . 14

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) . . . . . . . . . . . . 16

*Makins v. District of Columbia*, 277 F.3d 544 (D.C. Cir. 2002) . . . . . . . . 18

*McClellan v. Midwest Machining, Inc.*,
  900 F.3d 297 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . 18

*Myricks v. Fed. Reserve Bank of Atlanta*,
  480 F.3d 1036 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . 2, 8, 11, 17

*Norfolk S. Corp. v. Chevron, U.S.A., Inc.*,
  371 F.3d 1285 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 9

*Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*,
  65 F.3d 562 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 4, 18

*Puentes v. United Parcel Serv., Inc.*,
  86 F.3d 196 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 2, 3, 9, 17

Cases—Continued                                                          Page

*Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*,
  859 F.2d 865 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stroman v. West Coast Grocery Co.*, 884 F.2d 458 (9th Cir. 1989) . . . . . . . .  8

*Torrez v. Pub. Serv. Co. of N.M.*, 908 F.2d 687 (10th Cir. 1990) . . . . . . . . . 10

*Town of Newton v. Rumery*, 480 U.S. 386 (1987)  . . . . . . . . . . . . . 3, 7, 12

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020)  . . . . . . . . . . . . 3, 14

*W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . 10

*Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998)  . . . . . . . . . 16

Constitutional Provisions, Statutes and Rules

42 United States Code

  § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 9

Other Authorities

## II   Certificate of Interested Persons and Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1 and 28-1(b), the undersigned certifies that the following persons and entities have an interest in the outcome of this case. No party is a publicly traded corporation, and no publicly traded corporation has an interest in the outcome.

1. Akerman LLP, counsel for Appellee;

2. Fiore, Kristen M., counsel for Appellee;

3. Griffin, Lindsay S., United States Magistrate Judge (M.D. Fla.);

4. Margolin, Jason L., counsel for Appellee;

5. Merryday, Steven D., United States District Judge (M.D. Fla.);

6. School Board of Hillsborough County, Florida, Appellee;

7. Sneed, Julie S., United States District Judge (M.D. Fla.);

8. Warner, Blake Andrew, Plaintiff-Appellant, *pro se*.

1

## III    Rule 40(b)(2) Statement: The Panel Decision Conflicts With This Court's Published Precedent and the Supreme Court's

Appellant submits that the panel decision conflicts with this Court's published precedent and with decisions of the Supreme Court, and that the case presents a question of exceptional importance. Fed. R. App. P. 40(b)(2)(A), (B), (D). The conflict with this Court's published precedent is direct. The panel held that a release of federal civil-rights claims is governed by Florida four-corners contract law and is knowing and voluntary whenever its language is "clear and unambiguous," with no inquiry into extrinsic evidence. This Court's published decisions hold the opposite on every point:

1. **Source of law.** The validity of such a release is a question of federal law. *Beadle v. City of Tampa*, 42 F.3d 633, 635 (11th Cir. 1995); *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007).

2. **The governing test.** A federal totality-of-the-circumstances test applies, under which the document's clarity is one factor, not the test. *Beadle*, 42 F.3d at 635; *Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11th Cir. 1996).

3. **Extrinsic evidence.** The inquiry considers extrinsic evidence even against facially clear language. *Id.* 198–99; *Bledsoe v. Palm Beach Cnty. Soil & Water*

2

*Conservation Dist.*, 133 F.3d 816, 819–20 (11th Cir. 1998).

4. **Disposition.** Because knowing-and-voluntariness is ordinarily a jury question, summary judgment is improper; this Court has twice reversed it. *Puentes*, 86 F.3d at 198–200; *Bledsoe*, 133 F.3d at 819–20.

5. **Wrong category.** Four-corners treatment is reserved for procedural and forum waivers that surrender no substantive statutory right; a release of 42 U.S.C. § 1983 and Fair Housing Act claims surrenders substantive rights. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1371–72 (11th Cir. 2005).

The panel's rule and this Court's rule cannot both be the law of the Circuit. The panel can correct that conflict itself on panel rehearing; en banc review is necessary only if it does not. The decision also conflicts with decisions of the Supreme Court of the United States: *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51–52 (1974); and *United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020).

Appellant further submits that this appeal presents a question of exceptional importance: **whether a waiver of federal civil-rights claims may be enforced on summary judgment under state four-corners contract law and a state public-policy maxim, without the federal knowing-and-voluntary inquiry and federal**

3

**public-policy balancing that the Supreme Court and this Court require.** The courts of appeals are openly and intractably divided on that question, and they cannot agree which circuit stands on which side. See *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 570–71 (7th Cir. 1995) (noting that "courts disagree as to the appropriate source of law" governing a release of federal civil rights and listing the Second, Third, Fifth, Tenth, and Eleventh Circuits as applying a federal "totality of the circumstances" approach).

## IV    Statement of the Issues Presented for Rehearing

1. Whether the panel overlooked controlling Supreme Court and Eleventh Circuit precedent by deciding two federal questions under Florida contract law—the validity of a waiver of federal civil-rights claims and whether enforcing it violates public policy—when federal law governs both; and whether the validity inquiry was a disputed question of fact requiring discovery that rendered summary judgment premature.

2. Whether the panel approved deciding the case on the agreement not to sue—an affirmative defense the Board never pleaded—contrary to the party-presentation principle reaffirmed in intervening Supreme Court authority the panel did not cite.

4

3.  Whether the agreement not to sue, construed to bar ongoing and future Equal Protection and Fair Housing Act violations, is an impermissible prospective waiver of civil rights that federal public policy forbids, and whether the panel misapprehended the Fair Housing Act's continuing-violation rule.

## V    Introduction and Course of Proceedings

Appellant petitions for panel rehearing and, in the alternative, rehearing en banc under Federal Rule of Appellate Procedure 40 and Eleventh Circuit Rule 40.  This petition concerns one dispositive legal error.  The panel affirmed summary judgment by treating a waiver of federal civil-rights claims as an ordinary Florida contract question.  It held the Agreement's "clear and unambiguous language" established a knowing and voluntary waiver (Op. 12–13), declined to "go beyond the four corners of the document" to consider Warner's extrinsic evidence (Op. 11), and rejected his federal public-policy objection under a Florida maxim counseling "extreme caution" before voiding a bargain (Op. 13).  That approach conflicts with Supreme Court and Eleventh Circuit precedent holding that the validity and the public-policy enforceability of a waiver of federal remedial rights are governed by federal law and a totality-of-the-circumstances inquiry.[1]  Warner briefed that federal standard; the

---

[1] Warner preserved this issue.  *See* Appellant's Br.  54–61 (federal law governs the validity and enforceability of releases of federal civil-rights claims, and the totality factors of *Beadle* and *Puentes* precluded summary judgment); Appellant's Br.  63–67 (no prospective waiver of civil rights).

panel applied none of it.

Warner, an African-American parent, sued the School Board under 42 U.S.C. § 1983 and the Fair Housing Act, alleging that the Board's school-assignment maps and school-board voting-district maps are racially discriminatory. The Board defended on a 2022 settlement of a separate dispute over the special-education services of Warner's minor child, J.W. The district court converted the Board's pleadings motion to summary judgment, stayed discovery, denied Warner's Rule 56(d) motion, and held the settlement's release and agreement not to sue barred the claims. The panel affirmed in an unpublished per curiam opinion.

The panel need not wait for en banc review. Panel rehearing is warranted because the opinion rests on a legal rule neither Supreme Court nor Eleventh Circuit precedent permits: that a release of federal civil-rights claims is valid whenever ordinary state-law contract interpretation deems its language clear. If the panel does not correct that conflict, rehearing en banc is warranted because the rule the opinion applied conflicts with this Court's decisions in *Beadle*, *Puentes*, *Bledsoe*, *Myricks*, and *Freeman*, and with the Supreme Court's decisions in *Rumery* and *Gardner-Denver*.

6

**VI   The panel overlooked controlling authority holding that federal law, not Florida contract law, governs both the validity and the public-policy enforceability of a waiver of federal civil-rights claims.**

This issue is reviewed de novo. *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1316–17 (11th Cir. 2024) (summary judgment is reviewed de novo).

**1.   The validity of a waiver of federal rights is a federal question judged by a totality-of-the-circumstances test that admits extrinsic evidence, not by the four corners of the document.**

The validity of a waiver of a federally guaranteed right is a question of federal law, and the panel's resort to Florida four-corners contract law was legal error. "The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." *Brookhart v. Janis*, 384 U.S. 1, 4 (1966). The same rule governs releases of federal civil-rights claims: their validity "is a question of federal law." *Rumery*, 480 U.S. at 392. The panel instead held that because the Agreement "designates Florida law in its choice-of-law provision," it would "interpret the Settlement Agreement under Florida law" and enforce the release on the face of the document (Op. 11). A choice-of-law clause may govern interpretation;

7

it cannot supply the rule that decides whether a waiver of federal rights is valid. See

*Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir. 1989) (the interpretation and validity of a release of federal claims is governed by federal law).

Under the governing federal standard, a release of federal remedial rights "must be closely scrutinized" under the totality of the circumstances—a fact-intensive, multi-factor inquiry, not a parol-evidence bar. The panel's own authority says so. The only federal case the panel cited for its knowing-and-voluntary holding was *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1352 (11th Cir. 1983)—a Title VII release case holding that such a waiver "must be closely scrutinized" and that the court "must determine whether the employee's consent to the settlement agreement was knowing and voluntary." The panel cited *Freeman* for the opposite proposition— that "clear and unambiguous language" alone proves the waiver (Op. 13). This Court has fixed the controlling six-factor federal test: a court reviews "the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation; and the consideration given." *Beadle*, 42 F.3d at 635; accord *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d at 1040 (applying the federal totality test and the six *Beadle* factors to a release of a federal claim). Clarity is one factor; it is not the test.

The panel also pulled its four-corners rule from the wrong line of authority. Its sole source was *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004)—a CERCLA res-judicata case, not a civil-rights-waiver case. And this Court has confined ordinary-contract treatment to procedural and forum waivers, precisely because "a party agreeing to arbitration does not waive any substantive statutory rights." *Caley*, 428 F.3d at 1371–72. A release of 42 U.S.C. § 1983 and Fair Housing Act claims surrenders substantive rights. The panel placed it in the wrong bucket and applied the wrong rule.

2.  **Whether the waiver was knowing and voluntary was a disputed question of fact requiring discovery, and the panel compounded the error by refusing Warner's extrinsic evidence.**

The denial of Rule 56(d) discovery is reviewed for abuse of discretion, but the controlling error is legal: the panel applied the wrong standard.

Even where a release is facially clear, the federal totality inquiry is a fact question that ordinarily cannot be resolved on the papers. This Court has twice reversed summary judgment on that ground. In *Puentes*, 86 F.3d at 198–200, the plaintiffs did "not contest the clarity of the release language," yet this Court reversed because the

time-and-counsel factors raised "a genuine issue of material fact" that "may not be resolved by summary judgment." And in *Bledsoe*, 133 F.3d at 819–20, this Court reversed where a facially broad release ("any and all claims . . . of any nature whatsoever") did not "mention a waiver of federal discrimination claims," the signer's affidavit asserted a narrower understanding, and no separate consideration was shown—holding the district court "should not have summarily adopted" a four-corners reading and that "[e]ach factor should be independently analyzed." Warner's record is materially identical: a high-school education, no counsel, a sworn declaration that the Board's attorney represented the release covered only J.W.'s special-education claims (Doc. 107-1 ¶ 7), and no consideration flowing to him personally.

The federal totality test admits that extrinsic evidence even against facially clear language; the panel's refusal to consider it was error. "[U]nambiguous language cannot derail our analysis of whether the waiver was made knowingly and voluntarily." *Torrez v. Pub. Serv. Co. of N.M.*, 908 F.2d 687, 690 (10th Cir. 1990). The same is true of an Individuals with Disabilities Education Act settlement releasing a parent's civil-rights claims, which receives "the more searching standards reserved for waivers of civil rights claims, rather than general contract principles"; there, a post-signing certification "alone" defeated summary enforcement. *W.B. v. Matula*, 67 F.3d 484, 497–98 (3d Cir. 1995).

10

Summary judgment was independently premature because the court denied discovery into the very facts on which it ruled. After staying discovery and converting the Board's pleadings motion, the court denied Warner's Rule 56(d) motion seeking discovery into the Agreement's scope and the circumstances of its execution (Doc. 106). "[S]ummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery," and it is reversible error to grant judgment while a discovery request is unresolved. *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870–71 (11th Cir. 1988). That the employer prevailed in *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d at 1040 proves the point: this Court affirmed there only after applying the federal test to an educated party who was "represented by an attorney" and "had been given 60 days." Warner is the mirror image. The federal test the panel skipped compels reversal on his facts.

3.  **Whether enforcing a waiver of federal rights offends public policy is also a federal question, governed by a federal balancing test, not Florida's contract maxim.**

The panel committed a second, independent error of the same kind when it rejected Warner's public-policy challenge under state law. It held that "[e]nforcing the release to bar Warner's claims . . . does not violate public policy" because "the

11

Florida Supreme Court has advised courts to proceed with extreme caution when called upon to declare transactions void as contrary to public policy." (Op. 13, quoting *Bituminous Cas. Corp. v. Williams*, 17 So. 2d 98, 101 (Fla. 1944).) But whether enforcing a waiver of federal rights offends public policy is itself a federal question. "The question whether the policies underlying that [federal] statute may in some circumstances render that waiver unenforceable is a question of federal law," and the governing test is that "a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Rumery*, 480 U.S. at 392. A federal statutory right "affecting the public interest . . . may not be waived or released if such waiver or release contravenes the statutory policy." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945).

The panel cited no federal public-policy authority at all. It applied a 1944 Florida general-contract maxim to decide a federal question. A case directly on point shows the error: in a settlement with a public school district, the Ninth Circuit held that "[t]he question whether the waiver of federal constitutional rights is enforceable is a question of federal law, which we resolve by the application of federal common law," and that even a concededly knowing waiver is void where "the public policy favoring nonenforcement . . . outweighs any interest in enforcement." *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1395–96 (9th Cir. 1991). The

12

panel performed no such balancing. That is reversible legal error, and it compounds the prospective-waiver error addressed below.

## VII   The panel repeated the very party-presentation error Warner appealed, deciding the case on grounds no party advanced.

This issue presents a question of law reviewed de novo; the district court's decision to rest judgment sua sponte on an unpleaded ground is reviewed for abuse of discretion. The panel overlooked intervening, controlling authority—and repeated the very error Warner's appeal challenged.

Warner's appeal squarely raised the district court's departure from the party-presentation principle. The Board's answer pleaded release based only on paragraph 5, and its motion for judgment on the pleadings relied only on paragraph 5; the district court nonetheless barred Warner's voting-map claim under paragraph 6—the agreement not to sue—a defense no party pleaded or advanced.[2] Six months before the panel's opinion, the Supreme Court reaffirmed that a court "transgress[es] the party-presentation principle" when it rests decision on a ground a party "never had the chance to address," and that doing so is an abuse of discretion: "courts call balls and strikes; they do not get a turn at bat." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (per curiam); accord

---

[2]Warner preserved this. *See* Appellant's Br. 71–73 (the Board pleaded only paragraph 5; the district court's reliance on paragraph 6 violated Rule 8(c), Rule 56(f), and the party-presentation principle).

13

*Sineneng-Smith*, 590 U.S. at 375–77. The principle governs civil cases. *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

The panel did not correct that error; it committed the same one. It approved the district court's reliance on the unpleaded paragraph 6 and itself extended paragraph 6 to bar the Fair Housing Act claim—again, a ground no party advanced—on "judicial efficiency" grounds (Op. 16–18). The court thus supplied a waived affirmative defense for the represented Board against a pro se plaintiff: the precise inversion of the rule's purpose.

The panel repeated the error a second time when it chose the governing law. The Agreement's choice-of-law clause—and *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1290 (11th Cir. 2022), the decision the panel invoked to enforce it—appear nowhere in the parties' briefs. The Board argued only that the federal totality test was "wholly inapplicable" to a non-employment settlement (Appellee's Br. 40); Warner argued that federal law governs the validity and enforceability of a waiver of federal rights (Appellant's Br. 54–61). The panel supplied that rationale itself, holding that it would "interpret the Settlement Agreement under Florida law because the Agreement designates Florida law in its choice-of-law provision and the provision is not disputed" (Op. 11). The premise is mistaken: the application of state law to

14

these federal questions was the precise point Warner disputed, not a concession.

The panel wrote that Warner "does not dispute" that the voting-map claim falls under the language of the agreement not to sue (Op. 17). But Warner did dispute the ground on which the court decided: he argued that paragraph 6 was never pleaded or moved as an affirmative defense, and that Rule 8(c) and Rule 56(f) required notice before judgment could rest on it. Whether the covenant's words might reach the claim does not answer whether the court could decide the case on a defense no party raised. Under *Clark*, it could not.

**VIII   The agreement not to sue, as the panel construed it, is an impermissible prospective waiver of ongoing and future civil-rights violations that federal public policy forbids.**

This issue is reviewed de novo.

At minimum, the agreement not to sue cannot be construed to prospectively waive future or continuing federal civil-rights violations absent a clear, explicit, and knowing waiver and a federal public-policy balancing. The panel held the covenant bars the voting-map and Fair Housing Act claims because they "connect[] in any way to . . . events occurring in whole or in part on or before" March 21, 2022 (Op. 16,

15

18).  So construed, the covenant works a prospective waiver of federal civil rights. "[T]here can be no prospective waiver of an employee's rights under Title VII," because advance waiver "would defeat the paramount congressional purpose" behind the civil-rights laws. *Alexander*, 415 U.S. at 51–52.  And a general contractual provision will not be read to surrender a federally protected right unless the waiver is "clear and unmistakable" and "explicitly stated." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998).  A boilerplate covenant reaching anything "connected in any way" to pre-2022 "events" is not the explicit, knowing waiver of Equal Protection and Fair Housing Act rights that federal law requires.

The panel's premise—that the challenged conduct is a closed, pre-2022 "event"— misapprehends the Fair Housing Act.  The panel faulted Warner for "fail[ing] to show any changes to the school assignment map after March 2022" (Op. 18).  But a continuing Fair Housing Act practice requires no fresh post-execution act: the maintenance of a racially drawn boundary that continues to make housing unavailable is itself a present violation through its last occurrence, and "a wooden application of [the limitations rule] which ignores the continuing nature of the alleged violation would only undermine the broad remedial intent of Congress." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982).  The Board's continued enforcement of the boundary after March 2022 is not a pre-2022 "event" the covenant can reach; reading it oth-

16

erwise immunizes the Board prospectively for ongoing constitutional and statutory violations—exactly what *Gardner-Denver* forbids.

**IX    The panel decision squarely conflicts with this Court's own published precedent and deepens an acknowledged national split, warranting rehearing en banc.**

En banc review is warranted first to secure and maintain uniformity of this Court's decisions. Fed. R. App. P. 40(b)(2)(A). This Court's published precedent is settled: the validity of a release of federal civil-rights claims is governed by a federal totality-of-the-circumstances test, under which the clarity of the document is one factor among many and knowing-and-voluntariness is ordinarily a jury question. *Beadle*, 42 F.3d at 635 (six federal factors); *Puentes*, 86 F.3d at 198–200 and *Bledsoe*, 133 F.3d at 819–20 (each reversing summary judgment despite clear or facially broad release language); *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d at 1040 (applying the federal test); *Caley*, 428 F.3d at 1371–72 (confining four-corners treatment to procedural waivers that surrender no substantive right). The panel held the opposite—that Florida four-corners contract law controls, that "clear and unambiguous" language alone proves the waiver, and that Warner's extrinsic declaration could not be considered. Those two rules cannot both be the law of this Circuit. If the panel

17

does not correct the conflict, en banc review is necessary to restore uniformity.

The question is also one of exceptional importance. The courts of appeals have fractured over both the source of law governing such waivers—federal common law versus state contract law—and the test—a federal totality inquiry that admits extrinsic evidence versus a four-corners rule. *Pierce Atchison*, 65 F.3d at 570–71 (cataloguing the camps). The division is so entrenched that the circuits cannot agree where this Court stands: *Pierce* lists the Eleventh Circuit among the circuits applying the federal totality approach, while the District of Columbia and Sixth Circuits place it in the state-law camp. *Makins v. District of Columbia*, 277 F.3d 544, 547–48 (D.C. Cir. 2002) (listing "[t]he Seventh, Eighth, Tenth, and Eleventh Circuits" among those that look to state law to determine whether a party validly settled federal claims); *McClellan v. Midwest Machining, Inc.*, 900 F.3d 297, 310 (6th Cir. 2018) ("a handful of circuits have held that state, not federal, common law applies"). The panel's decision—placing this Court on the state-law side of that divide, against its own precedent—deepens the confusion in a case that controls the rights of a pro se civil-rights plaintiff and his community.

18

## X    Conclusion

The Court should grant panel rehearing, withdraw the opinion, vacate the judgment as to the Equal Protection (Counts I and II) and Fair Housing Act claims, and remand for application of federal law to the validity, scope, and public-policy enforceability of the asserted waiver after appropriate Rule 56(d) discovery.  If the panel declines to do so, the Court should rehear the case en banc to resolve the conflict with this Court's published civil-rights-waiver precedent.

## XI    Certificate of Compliance

This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,752 words.

This petition complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using LaTeX in 14-point Times New Roman font.

## XII    Certificate of Service

I certify that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy on counsel of record for Appellee, Kristen M. Fiore and Jason L. Margolin, Akerman LLP.

June 4, 2026
_____

Date

/s/blake warner
_____

Signature

Blake Andrew Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM

21